UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JUDITH C. SOMERS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | CASE NO.　C06-5007RJB<br><br>REPORT AND RECOMMENDATION<br><br>Noted for September 15, 2006 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the Administration's final decision for further consideration.

<u>FACTUAL AND PROCEDURAL  BACKGROUND</u>

Plaintiff, Judith Somers, was born in 1945. She completed high school and one year of college level courses. She has past work experience as a secretary (10 years), bookkeeper (5 years) and a personal secretary for a philanthropist (for over 20 years). She began working at the age of 18 and worked continuously until September 2002, when she and her husband moved to Sequim, Washington. She alleges she has been unable to work since September 13, 2002. Plaintiff argues the administration should have found her disabled base on medical impairments related to her upper right extremity (chronic rotator cuff tear, Residual Sympathetic Dystrophy of the right shoulder and arm and chronic elbow, wrist and finger

1   pain), internal organs, and hip.

2   She filed an application for Social Security Disability benefits on December 10, 2003.  Her claim
3   was initially denied, and then denied again after being considered by an Administrative Law Judge ("ALJ").
4   The ALJ found that Ms. Somers was not capable of performing her past relevant work as a bookkeeper.
5   On December 23, 2005, the Administrative Appeals Council denied Plaintiff's request for review, making
6   the ALJ's decision the final decision for review.

7   Plaintiff now brings the instant action pursuant to 205(g) of the Social Security Act ("the Act"), as
8   amended, 42 U.S.C. § 405(g), to obtain judicial review of the defendant's final decision denying plaintiff's
9   application for disability insurance benefits.  Plaintiff specifically contends: (1) the ALJ analysis of
10  Plaintiff's residual functional capacity is not supported by substantial evidence; (2) the ALJ improperly
11  rejected the opinions of Plaintiff's treating physician; (3) the ALJ improperly discredited Ms. Somers'
12  subjective pain complaints; and (4) the ALJ's hypothetical question posed to the Vocational Expert was
13  incomplete.

14                                    DISCUSSION

15  The Commissioner's decision must be upheld if the ALJ applied the proper legal standard and the
16  decision is supported by substantial evidence in the record.  Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th
17  Cir. 1992); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant
18  evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales,
19  402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla
20  but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v.
21  Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational
22  interpretation, this Court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d 577, 579
23  (9th Cir. 1984).

24  The burden is on the claimant to prove that she is disabled within the meaning of the Social
25  Security Act.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Disability is the "inability to engage
26  in any substantial gainful activity by reason of any medically determinable physical or mental impairment
27  which can be expected to result in death or which has lasted or can be expected to last for a continuous
28  period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 423(d)(1)(A).  A claimant is disabled only

REPORT AND RECOMMENDATION
Page - 2

if her impairments are of such severity that she is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c (a)(3)(B).

In the case at hand, the ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. At step two, the ALJ found that Plaintiff had the following severe impairments: right rotator cuff tear, status post arthroscopy, and headaches. At step three, the ALJ found that Plaintiff's impairments, alone or in combination, did not meet or equal the requirements of a listed impairment. The ALJ determined that Plaintiff retained the following residual functional capacity ("RFC"): she could lift and carry 20 pounds occasionally and 10 pounds frequently with her non-dominant left arm; stand and/or walk for 6 hours in an 8 hour day and sit for 6 hours in an 8-hour day; she was limited to only occasional balancing and crawling, but should avoid climbing ladders, ropes, and scaffolds; she was precluded from over-the-shoulder raising with her dominant right arm; and she should avoid concentrated exposure to hazards such as machinery or heights. At step four, the ALJ found that Plaintiff was able to perform her past relevant work as a bookkeeper. Thus, the ALJ concluded Ms. Somers was not disabled.

**A. THE ALJ PROPERLY WEIGHED THE MEDICAL EVIDENCE IN THE RECORD**

The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant

that conflicted with the treating physician's opinion.

Here, plaintiff contends the ALJ improperly evaluated the medical evidence when he determined plaintiff's residual functional capacity, and the ALJ erroneously failed to consider the opinion of Dr. Weber.  A review of the ALJ's decision indicates the medical records from February 1987 through February 2005 were considered.  The ALJ summarized the medical reports and the hearing testimony, concluding Ms. Somers' right rotator cuff tear, status post arthroscopy, and headaches were "severe" impairments, as noted above.  The ALJ also found Ms. Somers' had several non-severe impairments, including diabetes, hypertension and an affective or adjustment disorder.  Based on the entire record as a whole, the ALJ found Ms. Somers retained the capacity to lift and carry 20 pounds occasionally and 10 pounds frequently with her non-dominant left arm; stand and/or walk for 6 hours in an 8 hour day and sit for 6 hours in an 8-hour day; she was limited to only occasional balancing and crawling, but should avoid climbing ladders, ropes, and scaffolds; she was precluded from over-the-shoulder raising with her dominant right arm; and she should avoid concentrated exposure to hazards such as machinery or heights.  The medical evidence relied on by the ALJ supports this assessment.  The ALJ wrote:

> The record reflects that the claimant sustained an on-the-job injury in November 1984. She injured her right shoulder. She was treated conservatively for 1-1/2 years. An arthrogram was performed which showed a tear of the rotator cuff. Subsequently, she had an open repair through a short anterior incision in April 1986. She did well and returned to work in July1986. However, her shoulder became progressively more painful and weak. She had difficulty reaching forward and above her shoulder level. She was diagnosed with anterior impingement syndrome (Exhibit 1F/4). Subsequently, she underwent an arthroscopic anterior acromionectomy and debridement on February 4, 1987 (Exhibit 1F/2). She returned to work in March 1987 (Exhibit 2F/79).
>
> Medical records from Jerome B. Brem, M.D., the claimant's rheumatologist, indicate that he has been treating the claimant for headaches for several years. He also provided treatment for her upper right extremity pain (Exhibit 2F).
>
> Due to continual problems with her right shoulder she underwent another arthroscopic acromioplasty and debridement of scar from subacromial space on September 21, 1992 (Exhibit 3F/3). She eventually returned to full time work (Exhibit 2F/37).
>
> In a physical examination at the Vancouver Clinic in June 2002 the claimant reported having no problems. She described having cervical cancer in her 20s but did not under[go] any surgery, chemotherapy or radiation. She further gave a medical history of a hysterectomy, with an anterior and posterior repair in her early 30s. Her last Pap smear in April 2000 was normal. She denied any difficulties with urinary or fecal incontinence. On examination Elizabeth Morgan, M.D. noted the claimant was alert and oriented. She was in no acute distress. Dr. Morgan found her examination to be essentially normal (Exhibit 10F/l-2).
>
> In May 2003 the claimant went to Sherwood Medical Center to establish medical care. Paul Hoque, M.D. saw the claimant and she reported that she had recently moved to Sequim

> from Vancouver, Washington. She stated she smoked half a pack of cigarettes per day and rarely drank alcohol. She did not exercise. Upon review of systems, Dr. Hoque noted that the claimant was generally negative except she complained of having a cough. She denied having any pain, swelling, weakness or numbness. There was no evidence of sores, lesion or rashes. Her weight was 126 pounds. Her extremities were without edema, without clubbing and were symmetrical. Neurologically, she was within normal limits (Exhibit 1 7F/22-24).
>
> On March 2, 2004 Elizabeth J. Borrone, M.D. conducted a consultative physical examination on the claimant on March 2, 2004. The claimant stated that since her injury with subsequent surgeries, she has been retrained by Workman's Compensation and has been working at Community Southwest Washington Commission. She indicated she was a bookkeeper and then a personal secretary in Vancouver, Washington which lasted nine months. She stated she has not worked since September 2002. Dr. Borrone noted the claimant reported she continues to have difficulties with her right upper extremity (shoulder) with limited ability to use her arm, elbow, wrist and fingers. She stated she can barely use her right arm. Dr. Borrone was unclear how a rotator cuff injury could cause tendonitis at the elbow and then produce problems with flexion and extension at the wrist as well as cause the digits in her right hand to move very slowly. The claimant reported she only slept 4 hours a night due to right shoulder pain, although she admitted to napping. On examination, Dr. Borrone noted the clamant weighed 135 pounds and was 62 ½ inches in height. She held herself very stiffly and had an unusual gait in which her legs were very stiff, particularly her knees. She sat with her right are held down with the hand flat against the chair seat and her arm pressed close against her body, not moving her shoulder. Dr. Borrone noted her upper extremities were normally developed, however, she had a number of surgical scars on the right shoulder. The right elbow had limited extension and flexion, whereas the left elbow was fully functional. Both arms were able to pronate and supinate fully. She held her right forearm and wrist very tightly to her body. She displayed great difficulty in flexing the right thumb, yet when it was put into that position she did it relatively easily. There was full flexion at both the MP joint and the IP joint. The claimant was very hesitant about doing anything with the right hand. Dr. Borrone found no obvious anomalies to the digits or the thumb, and there was no evidence of arthritis. Her left upper extremity was normal and she had full flexion and extension throughout. On neurological examination, she was noted to be oriented. She communicated readily and easily with the examiner. Her motor strength in the right arm was weaker then the left as well as right grip was much weaker than left grip. However, her motor strength of the lower extremities was equal.

Tr. 22-23.

The medical evidence in the record as a whole, supports the ALJ's RFC finding and conclusions that plaintiff is capable of performing sedentary skilled work, including the work she did in the past as a bookkeeper. The opinions and records of Dr. Brem, Dr. Morgan, Dr. Hoque, and Dr. Borrone, discussed by the ALJ above, provide substantial evidence to support the ALJ's decision.

Plaintiff argues the ALJ did not adequately address the opinion of Dr. Weber. According to the record, Dr. Weber examined Ms. Somers in February 21, 2005. The ALJ addressed this in his decision, noting the Dr. Weber was seen by Ms. Somers on a complaint of loss of urine control. The ALJ noted the Dr. Black observed no muscle weakness and a normal, stable gait during the exam. Tr. 25. Plaintiff contends the ALJ's evaluation was unfair, particularly in context of Dr. Weber's follow up evaluation and

1  report, dated September 12, 2005. The court is not persuaded by Plaintiff's arguments. The ALJ did not
2  have Dr. Weber's later evaluation to consider and incorporate into his decision, which is dated July 7,
3  2005. Most importantly, it is the ALJ who is responsible for interpreting the medical evidence in the
4  context of the whole record, and here, the ALJ's analysis was reasonable and it is supported by substantial
5  evidence in the record. Accordingly, the court is unable to find any error in the decision.

6  **B. THE ALJ PROPERLY WEIGHED MS. SOMERS' CREDIBILITY**

7  As stated by Plaintiff, to a degree this matter "boils down to a question of credibility." Plaintiff's
8  Reply Brief (Doc. 15) at 8. When evaluating plaintiff's subjective complaints the ALJ findings must to be
9  properly supported by the record, and "must be sufficiently specific to allow a reviewing court to conclude
10 the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a
11 claimant's testimony regarding pain.'" Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en
12 banc*)(*quoting* Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)). An ALJ may
13 reject a claimant's subjective complaints, if the claimant is able to perform household chores and other
14 activities that involve many of the same physical tasks as a particular type of job. Fair v. Bowen, 885 F.2d
15 597, 603 (9th Cir. 1989). However, as further explained in Fair v. Bowen, *supra*, and Smolen v. Chater,
16 80 F.3d 1273, 1288 (9th Cir. 1996), the Social Security Act does not require that claimants be utterly
17 incapacitated to be eligible for benefits, and many home activities may not be easily transferrable to a work
18 environment where it might be impossible to rest periodically.

19 Here, plaintiff argues the ALJ failed to give specific and legitimate reasons for rejecting Plaintiff's
20 allegations of total disability and improperly relied on the opinion of Dr. Borrone. After reviewing the
21 ALJ's decisoin and the administrative record, the court finds that the ALJ properly weighed plaintiff's
22 credibility. The ALJ stated in his opinion the following:

23  The claimant's statements concerning her impairments and their impact on her ability to
    work are not credible. I find the testimony of the claimant and her spouse are not credible.
24  There is indication of symptom magnification which is noted in the consultative examination
    (Exhibit 12F/3). Her last job in Vancouver (in September 2002) ended not because of her
25  alleged impairments but because the couple moved to Sequim to retire. Although the
    claimant testified to having hand tremors there is no objective medical evidence in the
26  record of hand tremors. In February 2005 the claimant first reported urinary incontinence
    (Exhibit 19F/1). Although the claimant has had right shoulder pain and headaches for many
27  years she has worked (Exhibit 12F/1). On examination she was noted to be in no acute or
    apparent distress (Exhibits 19F/1; 17F/2; 10F/2, 61). Further the objective medical
28  evidence fails to fully support the claimant's allegations of disabling symptoms and
    limitations (Exhibits 12F; 10F/2; 14F/2; 17F/22-24). Additionally, her CT scans have been

>unremarkable (Exhibits 14F/1; 16F/2).
>
>Further, I find that the claimant's husband was urging her treating doctor to support a claim for disability in 1999 even though the doctor was doubtful that she qualified (Exhibit 2F/22).
>
>There is evidence that the claimant receives retirement benefits (Exhibit 15F/4) which would provide disincentive to seek out and perform past relevant work or other work within her residual functional capacity as outlined below.
>
>Although the claimant has described daily activities which are fairly limited, two factors weight [sic] against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitations to the claimant's medical condition, especially since a medical examiner concluded her symptoms seemed to be excessive in comparison to objective findings (Exhibits 12F/3; 15F/1). Overall, the claimant's reported limited daily activities are considered to be outweighed by other more persuasive evidence in the record.

Tr. 27.

Substantial evidence, cited by the ALJ, supports the ALJ's analysis of Ms. Somers' credibility. For example, the ALJ relied on the evaluation by Dr. Borrone (Tr. 329-333; Exhibit 12F). Significantly, Dr. Borrone wrote:

>I have grave reservations in this case. Everything is done in far too studied an approach and deliberate [or] the exam room She was able to completely lift the right arm and shoulder when she was at the front desk with the receptionist, using the right arm then and elevating the right shoulder. Her gait in the reception room before and after the exam was quite normal compared to the very steady, deliberate, hesitant gait which she demonstrated when I asked her to walk across the room in the exam room. Mrs. Somers may have a vastly more injured right shoulder than I am appreciating, but I am unconvinced that the problem with the shoulder should produce the limitations that she demonstrates in the right elbow, the right wrist, and the right hand. Those digits I feel could have moved far more normally and it was, in my view, watching some very deceptive movements.

(Tr. 331). In addition to Dr. Borrone, the ALJ further noted that several physicians did note minimal physical impairments which support his finding that Ms. Somers' allegations of total disability are not credible (Dr. Michels, Tr. 347; Dr. Morgan, Tr. 247; Dr. Brem, Tr. 124; Dr. Dr. Black, Tr. 340; Dr. Hoque, Tr. 370). As discussed above, the medical evidence was properly evaluated by the ALJ. In sum the court finds substantial evidence supports the ALJ's findings regarding the credibility of Ms. Somers' allegations of total disability.

**C.   THE ALJ'S PROPERLY RELIED ON TESTIMONY OFFERED BY THE VOCATIONAL EXPERT**

Plaintiff argues the ALJ erred at step-four of evaluation process due to the reliance of the ALJ on the vocational expert's testimony. Plaintiff argues the vocational expert's opinion, that Ms. Somers is

capable of returning to her past work as a bookkeeper, is flawed due to the vague hypothetical posed by the ALJ.

Where there is conflicting evidence the ALJ may resolve such conflicts, and the ALJ's findings will be upheld where the weight of the medical evidence supports the hypothetical questions posed by the ALJ. Martinez v. Heckler, 807 F.2d 771 (9th Cir. 1986). A vocational hypothetical must set forth all the reliable limitations and restrictions of the particular claimant that are supported by substantial evidence. See Osenbrock, 240 F.3d at 1162-63; Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). Although the hypothetical may be based on evidence which is disputed, the assumptions in the hypothetical must be supported by the record. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)(*citing* Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)).

Here, relying on testimony from a vocational expert, the ALJ concluded that Ms. Somers could perform her past work as a bookkeeper. At the hearing, the ALJ asked the vocational expert the following:

> So the hypothetical involves a female, who was born in February of 1945, so she's currently aged 60, and she's alleging disability since September of 2002, when she was 57, so the age range for the period we're looking at is 57 to 60. This lady has a high school education, plus one year of college. And her work history is Mrs. Somers', so there we incorporate the testimony, which had those two jobs. She has a number of physical impairments, and one significant one affecting her dominant right arm. It's a shoulder injury. She' been operated on three times, and it hasn't responded very well to the surgeries, but I think what's significant from a vocational standpoint is how is she limited. And I'll refer here, Mr. Rogers, to the disability services assessment of functions. I may make some changes as we go along here. That's at Exhibit 13-F. So let's say, at least hypothetically, that she's capable of lifting ten pounds frequently, 20 occasionally, and this would be primarily with the non-dominant left arm. That she can be on her feet as much as six hours or more, cumulatively, in an eight hour work day, and the same for sitting. We have a number of postural limitations, and these are that she's capable only of occasional stooping, and occasional crawling. Occasional means, cumulatively, up to one-third of a work day, but no more. She should never, because of a balancing problem, never be on ladders, ropes, or scaffolds. No, on, on the dominant right arm, no above the shoulder reaching. And there is an environmental limitation, and it's this, that she must avoid concentrated exposure to hazardous conditions, such as moving machinery, if you fell against it, she might be injured, or being on heights, again problem if she fell. So that's, let's say that's a first hypothetical. Could the hypothetical individual do the kinds of secretary work, secretarial work, that Mrs. Somers has done?

Tr. 456-457. In response, the vocational expert stated Mr. Somers would be able to do the type of work she has done in the past as a bookkeeper. Tr. 458.

Plaintiff's argument is based on the premise that the ALJ erred when he evaluated Plaintiff's testimony, the medical evidence and Plaintiff's RFC, discussed above. The court finds no error in the ALJ's evaluation of Plaintiff's allegations, the ALJ's review of the medical evidence or the RFC analysis,

and thus, the court finds no error in the hypothetical, which is based on the ALJ's RFC, posed to the vocational expert or in the ALJ's reliance on the vocational expert's testimony.

## CONCLUSION

Based on the foregoing, the Court should AFFIRM the administration's decision. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **September 15, 2006**, as noted in the caption.

DATED this 25th day of August, 2006.

*/s/ J. Kelley Arnold*
J. Kelley Arnold
U.S. Magistrate Judge

REPORT AND RECOMMENDATION
Page - 9